**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| IRENE DELGADO, | ) | No. CV 09-0946-PHX-MHM |
| Plaintiff, | ) ) | **ORDER** |
| v. | ) ) | |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) | |
| Defendant. | ) ) ) | |

Plaintiff Irene Delgado ("Plaintiff") seeks judicial review of the Administrative Law Judge's ("ALJ") decision to deny her claim for disability insurance benefits prior to June 19, 2005, pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g). (Dkt. #1). Having reviewed the Parties' briefs and determined that oral argument is unnecessary, the Court issues the following Order:

**I.  PROCEDURAL HISTORY**

In May 2002 and 2003, Plaintiff applied for Disability Insurance Benefits ("DIB") under sections 216 and 223 of the Social Security Act, 42 U.S.C. §§ 416 (I), 423 ("the Act"), and Supplemental Security Income ("SSI") under sections 1602 and 1614 of the Act. (Administrative Record ("AR") 100-102, 103-105). Plaintiff alleges disability since June 4, 2001. (Id.) Plaintiff protectively filed for disability benefits again in January 2004. (AR 109-112). The Social Security Administration denied Plaintiff's applications initially and

upon reconsideration. (AR 35-36, 61-65, 68-70). Per Plaintiff's request, a hearing de novo before an ALJ was held on November 2, 2005. (AR 793-810). The ALJ held that Plaintiff was not disabled within the meaning of the Act beginning on June 4, 2001, but she did become disabled as of June 19, 2005. (AR 38-45). Born June 19, 1955, Plaintiff was classified as a "younger individual" until she turned fifty years old. (AR 43). Accordingly, the ALJ used the framework of medical-vocational rule 201.21 to support his finding that Plaintiff was not disabled prior to June 19, 2005. (Id.). However, beginning on June 19, 2005, Plaintiff became classified as "closely approaching advanced age." (AR 44). Using medical-vocational rule 201.14, the ALJ determined that Plaintiff was disabled on that date and eligible for benefits. (Id.). Despite the partially favorable ruling, Plaintiff appealed the ALJ's decision and the Appeals Council granted her request for review. (AR 46-48). The Appeals Council found that the ALJ did not properly consider that Plaintiff may have a mental impairment, nor did he evaluate the treating and examining-of-source opinions from Plaintiff's medical records. (Id.). Hence, the Appeals Council remanded the case for further proceedings. (Id.). After a supplemental hearing on August 24, 2007, the ALJ reaffirmed that Plaintiff was not disabled prior to June 19, 2005. (AR 16-24). The Appeals Council denied Plaintiff's request for review of the supplemental hearing decision, so the ALJ's ruling became the Social Security Commissioner's final administrative decision. (AR 10-12). In the present action, Plaintiff seeks judicial review of the ALJ's ruling pursuant to § 205(g) of the Act. (Dkt. #1).

**II. BACKGROUND**

    **A. Plaintiff's Medical History**

Plaintiff is a 55-year old female who sustained injuries to her upper and lower extremities on June 4, 2001 while lifting a patient in the course of her work as a nurse's assistant. (AR 798). At the time of her injury she was 46 years of age. (AR 100). After the injury in December 2001, Plaintiff underwent a surgical release of two fingers on her left hand. (AR 674). In May 2002, Plaintiff had surgery on her right hand for recurrent carpal tunnel. (AR 337). During the time between the two surgeries, Plaintiff's treating physician,

Dr. Steven Anderson, periodically put her on a non-work status for the affected extremities. (AR 298, 307, 689, 683, 676, 669, 658).[1] Occasionally, Dr. Anderson would allow Plaintiff to return to work, but with the restriction that she could not lift more than five pounds with either hand. (AR 666). In September 2002, Dr. Anderson allowed for work release with no hard grasping or climbing, (AR 624), and again, in January 2003, he approved her work release with no lifting of five pounds or more with either hand. (AR 622). In April 2004, Dr. Anderson diagnosed Plaintiff with right shoulder impingement and bilateral elbow cubital tunnel syndrome. (AR 618). At this time, Plaintiff was removed from work once again. (Id.). In July 2004, Dr. Todd Runyan performed Plaintiff's third surgery, making repairs to her right shoulder. (AR 600-15).

Plaintiff received treatment for injuries to her lower extremities as well. In October 2002, Podiatrist Dr. Stanton Cohen diagnosed Plaintiff with degenerative joint disease of the right foot. (AR 464). The following month, Dr. Cohen performed surgery, installing hardware in Plaintiff's right foot. (AR 462-63). Due to Plaintiff's continuing pain, in February 2003 Dr. Cohen performed surgery to remove the hardware. (AR 451-52). In March 2004, a magnetic resonance imaging scan ("MRI") showed Plaintiff had mild disc disease affecting her back. (AR 541). Despite these ailments, a State agency physician who consulted on Plaintiff's claim determined, in July 2004, that she,

> ...retained the physical residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently; sit, stand, and walk six hours in an eight-hour workday; push/pull with her lifting capacity; climb ramps and stairs, balance, stoop, kneel, crouch, and crawl occasionally; reach with the right upper extremity and handle/finger/feel bilaterally frequently; and perform work not requiring climbing ladders, ropes, or scaffolds or concentrated exposure to hazards such as machinery and heights; and that she had no visual, communicative or other manipulative or environmental limitations.

(AR 582-85).

---

[1] Dr. Anderson put Plaintiff on non-work status on June, 22, 2001, July 10, 2001, August 14, 2001, October 23, 2001, December 12, 2001, January 25, 2002, and May 5, 2002.

Plaintiff was also diagnosed and treated for psychological issues. In June 2003, Plaintiff was diagnosed with adjustment disorder with depression, and treated until December 2003 with individual counseling. (AR 498-503). In May 2004, psychologist Dr. Richard Gundersen evaluated Plaintiff at the direction of the Arizona Department of Economic Security. (AR 551-54). Dr. Gundersen diagnosed Plaintiff with mild retardation and personality disorder. (AR 553). His testing indicated Plaintiff's overall IQ was 64. (Id.). His evaluation also showed that Plaintiff had seriously limited or nonexistent abilities in many categories, including, but not limited to, her ability to relate to co-workers, deal with the public, deal with work stresses, maintain attention and concentration, understand, remember and carry out simple job instructions, and demonstrate reliability. (AR 549-50). Although Plaintiff received her high school diploma by taking special education classes, (AR 167), psychologist Dr. Ashley Hart indicated in February 2004 that Plaintiff's performance on the Wechsler Individual Achievement Test showed her intellectual capacity to be below third grade level in all areas except reading comprehension, which fell into the fourth grade level. (AR 505). Despite these limitations, a State agency physician consulting on Plaintiff's claim, Dr. Hubert Estes, determined, in November 2004, that Plaintiff,

>...had no evidence of limitation in her abilities to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, to sustain and ordinary routine without special supervision, to make simple work-related decisions, to ask simple questions or request assistance, to accept instructions and respond appropriate to criticism from supervisors, to maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness, to respond appropriately to changes in the work setting, to be aware of normal hazards and take appropriate precautions, to travel in unfamiliar places or use public transportation, and to set realistic goals or make plans independently of others...

(AR 697-98).

**B. Hearing Testimony**

At Plaintiff's hearing, on November 2, 2005, she testified that she graduated high school with special education classes (AR 807), had past work experience as a certified nursing assistant, had completed the training with assistance, (AR 798, 807-08), and had a driver's license. (AR 797). Plaintiff also testified that she has, "a headache that never goes

- 4 -

1 away, my neck, my shoulder, my fingers feel like they've been pounded on with hammers
2 and my arms, my back. I have trouble walking." (AR 799). On an average day, while taking
3 her medication, she claims to have a pain level of a seven or eight on a scale of one to ten,
4 with one being mild pain and ten being excruciating pain. (AR 806). Plaintiff further
5 testified that on an average day, she needs help getting out of bed in the morning, goes
6 grocery shopping with the assistance of her husband and a wheelchair, watches a "little bit
7 of television," and "tries to do her therapy exercises." (AR 801-04). Plaintiff also claims
8 that her doctors believe her ailments are due to Fibromyalgia and damage to her tissues and
9 tendons from her numerous injuries and surgeries. (AR 799-800). Finally, she claims that
10 her depression causes to her to be shaky, have a lack of concentration, get dizzy, and be
11 irritable. (AR 808-09).

At Plaintiff's rehearing on August 8, 2007, she testified to the same ailments.

### C. ALJ's Conclusion

On August 24, 2007, in his second decision on the matter, the ALJ denied Plaintiff's claim for disability benefits by following the requisite five-step sequential evaluation for determining whether an applicant is disabled under the Act. See 20 C.F.R. §§ 404.1520 and 416.920. (AR 20-24). At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the disability onset date of June 4, 2001. (AR 23). At step two, the ALJ stated that the medical evidence of the record indicated that Plaintiff had the following severe impairments: carpal tunnel syndrome, a learning disorder or borderline intellectual functioning, and a surgical ORIF of injury to the right ankle. (Id.). However, at step three, the ALJ concluded that these impairments did not meet or equal the criteria of any listed impairment pursuant to 20 C.F.R. Part 404, Subpart P, Appendix 1, as of the onset date of June 4, 2001. (Id.). Although the failure at step three concludes the analysis, the ALJ went on to discuss that Plaintiff could not perform her past relevant work (step four), but she retained the residual functional ability for unskilled sedentary work (step five). (Id.).

In making this determination, the ALJ noted that Plaintiff was a "younger individual" until June 19, 2005. (AR 43). Accordingly, "the framework of medical-vocational rule

201.21 tends to support a finding that the claimant was not disabled prior to June 19, 2005." (Id.). However, beginning June 19, 2005, Plaintiff was age fifty, which is defined as "closely approaching advanced age." (AR 44). Using the same medical-vocational rules, the ALJ determined that rule 201.14 directs a conclusion that the claimant is disabled. (Id.).

## III. STANDARD OF REVIEW

To qualify for disability insurance benefits, an applicant must establish that she is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment that has lasted or can be expected to last for a continuous period of not less than 12 months. See 42 U.S.C. § 1382c (a)(3)(A). The applicant must also show that she has a physical or mental impairment of such severity that the applicant is not only unable to do her previous work, but cannot, considering her age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. Quang Van Han v. Bowen, 882 F.2d 1453, 1456 (9th Cir. 1989). To determine whether an applicant is eligible for disability insurance benefits, the ALJ must conduct the following five-step sequential analysis:

(1) determine whether the applicant is currently employed in substantial gainful activity;

(2) determine whether the applicant has a medically severe impairment or combination of impairments;

(3) determine whether the applicant's impairment equals one of a number of listed impairments that the Commissioner acknowledges as so severe as to preclude the applicant from engaging in substantial gainful activity;

(4) if the applicant's impairment does not equal one of the listed impairments, determine whether the applicant is capable of performing his or her past relevant work;

(5) if not, determine whether the applicant is able to perform other work that exists in substantial numbers in the national economy.

20 CFR §§ 404.1520, 416.920; see also Bowen v. Yuckert, 482 U.S. 137, 140-41 (1987).

The Court must affirm an ALJ's findings of fact if they are supported by substantial evidence and free from reversible legal error. See 42 U.S.C. 405(g); see also . Ukolov v. Barnhart, 420 F.3d 1002, 1004 (9th Cir. 2005). Substantial evidence means "more than a mere scintilla," but less than a preponderance, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See, e.g., Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997); Clem v. Sullivan, 894 F.2d 328, 330 (9th Cir. 1990).

To determine whether substantial evidence supports a decision, the record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); see also Tylitzki v. Shalala, 999 F.2d 1411, 1413 (9th Cir. 1993). Nonetheless, "[i]t is for the ALJ, not the courts, to resolve ambiguities and conflicts in the medical testimony and evidence." Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995) (citations and internal quotation marks omitted). The ALJ may draw inferences logically flowing from the evidence, and "[w]here evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion which must be upheld." Id. (citation omitted). Regardless, "[i]f the evidence can support either affirming or reversing the ALJ's conclusion, [then the Court] may not substitute [its] judgment for that of the ALJ." Robbins v. Social Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006).

**IV. DISCUSSION**

Plaintiff makes three claims that the Court will categorize as two more general objections to the ALJ's decision. First, Plaintiff objects to the ALJ's decision regarding her physical impairments and contends: 1) the ALJ did not properly consider the surgeries' impact on her physical ability to sustain employment prior to her 50th birthday and; (2) the ALJ did not discuss the opinions of her treating physicians with respect to her frequent off-work status. (Dkt. #14). Secondly, Plaintiff contends that the ALJ did not consider the psychological/cognitive issues of the case. (Id.). The Court will address each objection in turn.

**A. Objections to the ALJ's Decision Regarding Plaintiff's Physical Impairments**

As discussed in II(B), *infra*, the ALJ's August 2007 decision comported with the requisite five-step sequential evaluation for determining whether an applicant is disabled under the Act. See 20 C.F.R. §§ 404.1520 and 416.920. (AR 20-24). The Court must affirm the ALJ's decision to deny Plaintiff benefits prior to June 19, 2005 if the decision is supported by substantial evidence and free from reversible legal error. See 42 U.S.C. 405(g); see also Ukolov, 420 F.3d at 1004. However, when evaluating whether the ALJ's denial of benefits is supported by substantial evidence, the record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the ALJ's decision to deny benefits. See Richardson, 402 U.S. at 401; Tylitzki, 999 F.2d at 1413.

Here, the ALJ's decision lists Plaintiff's physical impairments as carpal tunnel syndrome and surgical ORIF of injury to right ankle. (AR 21). The decision does not, however, discuss Plaintiff's numerous upper and lower extremity surgeries, recovery progress, or the Fibromyalgia discussed by her dozen or more treating physicians. Nor does the ALJ's decision discuss Dr. Anderson's placement of Plaintiff on restricted off-work status seven times from June 2001 to May 2002. The decision merely stated that pursuant to the medical-vocational 201.21 guidelines, the claimant was a "younger individual" prior to June 19, 2005, and as a result, was not disabled. (AR 22). Given the treating physicians' overwhelming evidence of Plaintiff's impairments, the ALJ's cursory examination does not meet the "substantial evidence" test to support a denial of benefits. See 42 U.S.C. 405(g); see also Ukolov, 420 F.3d at 1004.

Furthermore, in April 2007, the Social Security Appeals Council vacated the ALJ's original denial of benefits because "the hearing decision does not contain an evaluation of the treating and examining source opinions..." (AR 47). The Appeals Council ordered the ALJ to provide specific rationale as to why he found the evaluation of the State agency physician more compelling than Plaintiff's treating physicians. (AR 47-48). The ALJ's present decision suffers from the same infirmities as recognized by the Appeals Council in

the previous decision. Although the Court may not usurp the role of the ALJ by resolving conflicts in the medical evidence, the Court can not find even a mere scintilla of evidence of why the ALJ credited the consulting State physician over Plaintiff's treating physicians. Hence, without an explanation of why the State agency physician's opinion is more compelling than Plaintiff's physicians, the ALJ's decision is faulty with respect to his finding that Plaintiff was not <u>physically</u> disabled and entitled to benefits prior to June 19, 2005.

### B. Objections to the ALJ's Decision Regarding Plaintiff's Psychological/Cognitive Impairments

Plaintiff claims that the ALJ did not properly consider her psychological/cognative issues in his decision to deny her benefits prior to June 19, 2005. (Dkt. #14). As stated above, the Court must affirm the ALJ's decision if it is supported by substantial evidence and free from reversible legal error. <u>See</u> 42 U.S.C. 405(g); <u>see also</u> <u>Ukolov</u>, 420 F.3d at 1004. When evaluating whether the ALJ's denial of benefits is supported by substantial evidence, the record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the ALJ's decision to deny benefits. <u>See</u> <u>Richardson</u>, 402 U.S. at 401; <u>Tylitzki</u>, 999 F.2d at 1413.

Here, the ALJ's decision regarding Plaintiff's mental impairments followed the requisite five-step sequential evaluation for determining whether an applicant is disabled under the Act. (AR 21). The ALJ noted that Plaintiff has mild mental retardation and a history of special education classes. (<u>Id.</u>). He further noted that her mental impairments cause mild to moderate restrictions in her daily living activities, maintaining social functioning, and maintaining concentration, persistence and pace. (<u>Id.</u>). He concluded that such impairments satisfy the second step of the sequential evaluation. (<u>Id.</u>). Although there were discrepancies in the cognitive evaluations of Plaintiff's treating physician Dr. Gundersen and the State agency physician Dr. Estes, the ALJ noted that Plaintiff was "angry and irritated at the psychological CE, and her responses suggested poor effort on the mental status examination and testing." (<u>Id.</u>). Relying on this observation, the ALJ explained away the discrepancy between the medical evaluations, reasoning that even though Plaintiff

1 satisfies the requirements for a severe mental impairment, she can respond appropriately to
2 simple instructions and do simple tasks that do not require rapid performance in a setting of
3 low social contact. (Id.). Therefore, he concluded that her mental impairments did not
4 prevent Plaintiff from performing other work which exists in substantial numbers in the
5 national economy in accordance with 20 C.F.R. §§ 404.1520(b)-(f); §§ 404.920(b)-(f). (AR
6 21-24).

Although the ALJ more thoroughly discussed Plaintiff's mental impairments, this Court is skeptical that his conclusions are supported by substantial evidence. The fact that Plaintiff was angry or may have given a poor effort when evaluated by her treating physician, Dr. Gundersen, seems an inadequate ground on which to disregard Gundersen's entire report, which found Plaintiff had mild retardation, personality disorder, and limited or nonexistent abilities in many categories, and the conclusions of which are in stark contrast to those of the state agency physician. The Court, however, need not reach a definitive conclusion on this matter, as it has already stated that an award of benefits is proper based solely on Plaintiff's physical impairments.

**V.  SUMMARY**

The Court finds that the ALJ's August 2007 decision is lacking with respect to the finding that Plaintiff was not physically disabled prior to June 19, 2005. The ALJ's lack of an explanation of why the State agency physician's opinion is more compelling than Plaintiff's physicians' opinions makes his determination about Plaintiff's physical capabilities faulty, and Plaintiff should be granted disability benefits beginning with the injury onset date of June 4, 2001.

**Accordingly,**

**IT IS HEREBY ORDERED** reversing the ALJ's decision denying Plaintiff disability benefits from June 4, 2001 to June 18, 2005. (Dkt. #1).

**IT IS FURTHER ORDERED** remanding the case to the ALJ to award Plaintiff disability benefits from June 4, 2001 to June 18, 2005.

**IT IS FURTHER ORDERED** directing the Clerk of the Court to enter judgment accordingly.

DATED this 1st day of July, 2010.

_____
Mary H. Murguia
United States District Judge